# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

**26 -C- 7 6 1**

|  |  |
|---|---|
| **JILL SHUFFLEBOTHAM,**<br><br>Plaintiff,<br><br>v.<br><br>**MEIJER STORES LIMITED PARTNERSHIP,**<br><br>Defendant. | Case No.: _____ |



U.S. District Court
Wisconsin Eastern

**APR 29 2026**

FILED
Clerk of Court

## COMPLAINT

(ERISA Section 510 Retaliation,

Benefits Misclassification,

Constructive Discharge,

Worker Misclassification)

**JURY TRIAL DEMANDED**

Plaintiff Jill Shufflebotham, proceeding pro se, brings this action against Defendant Meijer Stores Limited Partnership and states as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction) and 29 U.S.C. Section 1132(e)(1) (ERISA civil enforcement jurisdiction).

2. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. Section 1391(b) because the events giving rise to this complaint occurred in Sheboygan, Wisconsin, which is located within this District.

3. Plaintiff has exhausted all administrative remedies required under ERISA. Plaintiff filed a formal ERISA Claim Initiation Form on March 20, 2024. Defendant denied Plaintiff's appeal in writing on August 6, 2024. Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission (Charge No. 443-2024-03478). The EEOC issued a Notice of Right to Sue on February 17, 2026. This complaint is filed within 90 days of receipt of that notice.

## II. PARTIES

4. Plaintiff Jill Shufflebotham is an individual residing at 2218 N 40th Street, Sheboygan, Wisconsin 53083.

5. Defendant Meijer Stores Limited Partnership is a Michigan limited partnership doing business in Wisconsin, operating retail store number 305 located at 924 N Taylor Drive, Sheboygan, Wisconsin 53081. Defendant is an employer within the meaning of ERISA and employs more than 50 employees.

## III. FACTUAL BACKGROUND

### A. Employment History

6. Plaintiff was employed by Defendant as a Food Clerk and Food Night Clerk at Store 305 from December 2, 2020 through May 5, 2024 (Employee ID 3077145). Plaintiff was scheduled to work 40 hours per week on third shift (approximately 10:00 PM to 6:30 AM) at a base rate of 15.75 per hour plus a 1.00 per hour third shift premium, for an effective hourly rate of 16.75.

7. Despite working 40 hours per week at 100% Full Time Equivalent (FTE), Defendant's Workday human resources system classified Plaintiff as Part Time in the Time Type field. This classification directly controlled Plaintiff's benefits eligibility and premium calculations. This misclassification is documented in Plaintiff's Workday Job History records produced in response to Plaintiff's Wisconsin Statute Section 103.13 personnel file request. See Exhibit A.

8. As a result of this Part Time classification, Plaintiff was charged health insurance premiums at the Part Time non-subsidy-eligible rate of approximately 152.08 per week, rather than the Full Time subsidized rate of 32.51 per week as documented in Defendant's own 2024 Benefits Comparison Guide. The weekly overcharge of 119.57 was deducted from Plaintiff's paycheck for approximately 130 weeks, resulting in approximately 15,544.00 in wrongful premium deductions. See Exhibit B.

9. Additionally, during portions of Plaintiff's employment, a tobacco surcharge of 20.00 per week was incorrectly applied to Plaintiff's health insurance premium despite Plaintiff certifying as a non-tobacco user in multiple prior enrollment years. Defendant's own appeal response confirms this surcharge was applied in error. See Exhibit C.

**B. The Protected Activity**

10. On March 20, 2024, Plaintiff called Meijer Rewards (administered by Alight Solutions) to formally dispute the tobacco surcharge. Plaintiff completed and submitted a formal Claim Initiation Form pursuant to Section 503 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1133. This constitutes protected activity under ERISA Section 510, 29 U.S.C. Section 1140. See Exhibit D.

11. Defendant's own written appeal response, dated August 6, 2024, confirms Plaintiff's March 20, 2024 call and acknowledges the surcharge was stopped going forward but declared it non-refundable. See Exhibit E.

**C. Evidence of Premeditation**

12. On March 1, 2024 -- nineteen days before Plaintiff's ERISA claim filing -- an unidentified Workday user manually entered an ad-hoc compensation change to Plaintiff's employment record labeled Plan Restructuring. This manual entry was not an automatic system-generated change. The identity of the person who made this entry is contained in Defendant's Workday audit log, which was not produced in response to Plaintiff's personnel file request. See Exhibit F.

13. On May 1, 2024 -- four days before Plaintiff's termination -- a No Call/No Show Written Warning was created in Defendant's Workday disciplinary system and then marked Canceled. This demonstrates management activity around Plaintiff's employment record in the window between Plaintiff's protected activity and her termination. See Exhibit G.

14. Defendant's Workday termination record shows a Due Date field associated with Plaintiff's termination event, evidencing that the termination was scheduled in advance as a planned task rather than a reactive decision made on the date of termination. See Exhibit H.

## D. The Termination

15. On May 5, 2024 -- forty-six days after Plaintiff filed her formal ERISA claim on March 20, 2024 -- Defendant terminated Plaintiff's employment. The stated reason was attendance. However, the same or similar attendance patterns had existed throughout Plaintiff's employment without resulting in termination. Nothing material changed in Plaintiff's attendance between her prior warnings and her termination except the filing of her ERISA claim.

16. Defendant's own records undermine the attendance justification. A written warning dated May 1, 2024 was created and then canceled without explanation four days before termination -- suggesting the termination decision was made at a level above standard progressive discipline procedures.

## E. The Rehire -- Evidence Against Defendant's Stated Rationale

On May 8, 2025 -- exactly one year and three days after terminating Plaintiff for alleged attendance issues -- Defendant rehired Plaintiff at the same store, processed by the same Store Human Resources Representative. An employer does not rehire an employee whose attendance genuinely warranted termination. The rehire is Defendant's own evidence that the stated termination rationale was pretextual.

## F. Constructive Discharge -- Second Employment Period

During Plaintiff's second employment period beginning May 8, 2025, Defendant failed to pay Plaintiff for orientation hours worked on May 29, 2025. Plaintiff raised this verbally with Store HR Representative Hannah Sheldon prior to June 5, 2025. On June 5, 2025, Plaintiff submitted a written request via email to Ms. Sheldon documenting the missing pay and requesting correction. See Exhibit I.

Despite Defendant's acknowledgment of the missing hours -- as evidenced by Ms. Sheldon's June 5, 2025 email directing a manager to manually enter the missed punches -- Defendant failed to fully and timely correct Plaintiff's compensation. Plaintiff, having exhausted verbal and written remedies, ceased reporting to work. This constitutes constructive discharge -- Defendant's continued failure to pay wages correctly made continued employment intolerable to a reasonable person.

## G. Simultaneous W2 and 1099 Employment -- Worker Misclassification

During Plaintiff's employment at Store 305, Plaintiff was simultaneously engaged as a 1099 independent contractor through the Hyer Tasker gig platform to perform frozen stocking duties -- identical to her W2 job duties -- at the same store, under the same supervisors, in the same department. This arrangement is documented across 140 payment transactions spanning May 2022 through May 2025. See Exhibit J.

Plaintiff was not a true independent contractor under applicable IRS and Department of Labor tests. Defendant controlled the manner, means, location, and supervision of Plaintiff's work. The work performed was identical to and integral to Defendant's core business operations. This arrangement allowed Defendant to avoid paying overtime, benefits contributions, FICA employer match, and workers compensation on the hours worked through Hyer, while simultaneously collecting inflated premium contributions from Plaintiff's W2 paycheck.

22. In weeks where Plaintiff worked both W2 and Hyer shifts at Store 305, Plaintiff's combined hours exceeded 40 per week. Defendant failed to pay overtime at the required rate of 1.5 times Plaintiff's regular rate for those excess hours.

## IV. CLAIMS FOR RELIEF

### COUNT I -- ERISA Section 510 Retaliation

*29 U.S.C. Section 1140*

Plaintiff incorporates by reference all preceding paragraphs.

ERISA Section 510 prohibits any person from discharging or otherwise discriminating against a participant or beneficiary for exercising any right to which she is entitled under an ERISA plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

Plaintiff is a participant in an ERISA-covered employee benefit plan sponsored by Defendant.

On March 20, 2024, Plaintiff exercised her right under ERISA by filing a formal Claim Initiation Form pursuant to ERISA Section 503 disputing an incorrectly applied tobacco surcharge. This constitutes protected activity under ERISA Section 510.

Forty-six days after Plaintiff's protected activity, Defendant terminated Plaintiff's employment. The temporal proximity between Plaintiff's protected activity and her termination, combined with: (a) the planned nature of the termination as evidenced by the Workday Due Date field; (b) the creation and cancellation of a disciplinary warning four days before termination; (c) the manual ad-hoc compensation change entered 19 days before Plaintiff's ERISA filing; and (d) Defendant's own decision to rehire Plaintiff one year later -- establishes that Defendant's stated attendance rationale was pretextual and that retaliation for Plaintiff's ERISA claim was the but-for cause of termination.

As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, lost retirement contributions, and other economic harm.

### COUNT II -- ERISA Section 502 -- Wrongful Denial of Benefits

*29 U.S.C. Section 1132(a)(1)(B)*

Plaintiff incorporates by reference all preceding paragraphs.

ERISA Section 502(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the plan and to enforce her rights under the plan.

Defendant wrongfully classified Plaintiff as Part Time in its Workday system despite Plaintiff working 40 hours per week at 100% FTE. This misclassification caused Plaintiff to be charged Part Time non-subsidy-eligible benefits premiums of approximately 152.08 per week rather than the Full Time subsidized rate of 32.51 per week -- a weekly overcharge of 119.57 sustained for approximately 130 weeks.

Defendant also wrongfully applied a tobacco surcharge of 20.00 per week to Plaintiff's premiums despite Plaintiff certifying as a non-tobacco user in multiple enrollment periods. Defendant's own records confirm this surcharge was applied in error.

The total wrongful premium deductions amount to approximately 16,744.00, exclusive of prejudgment interest.

## COUNT III -- Constructive Discharge in Violation of ERISA

Plaintiff incorporates by reference all preceding paragraphs.

Defendant's continued failure to pay Plaintiff correctly during her second employment period -- despite Plaintiff's verbal and written notice -- rendered continued employment intolerable to a reasonable person. Plaintiff's departure constitutes constructive discharge, which is actionable under ERISA as an adverse employment action taken against a plan participant.

## COUNT IV -- Worker Misclassification and Unpaid Overtime

*Fair Labor Standards Act, 29 U.S.C. Section 207 | Wisconsin Wage Payment Laws*

Plaintiff incorporates by reference all preceding paragraphs.

37. Defendant misclassified Plaintiff as an independent contractor through the Hyer Tasker platform while Plaintiff performed work identical in nature, location, and supervision to her W2 employment. Plaintiff was an employee of Defendant for purposes of the FLSA and Wisconsin wage laws with respect to her Hyer shifts.

38. In weeks where Plaintiff's combined W2 and Hyer hours exceeded 40, Defendant failed to pay overtime at the required rate. The precise overtime amount will be determined following discovery of Defendant's Kronos time records for the relevant periods.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff Jill Shufflebotham respectfully requests that this Court:

A. Award Plaintiff back pay and lost wages for the period of wrongful termination from May 5, 2024 through May 8, 2025, in the amount of approximately 34,840.00;

B. Award Plaintiff recovery of wrongful benefits premium deductions in the amount of approximately 16,744.00, plus prejudgment interest;

C. Award Plaintiff recovery of forced early 401(k) withdrawal penalties and taxes incurred as a direct result of Defendant's wrongful termination, in the amount of approximately 5,440.00;

D. Award Plaintiff recovery of lost 401(k) contributions and employer match during the period of wrongful termination, in the amount of approximately 7,394.00;

E. Award Plaintiff damages for lost compound investment growth on retirement funds wrongfully disrupted by Defendant's actions;

F. Award Plaintiff unpaid overtime wages for weeks in which combined W2 and Hyer hours exceeded 40, in an amount to be determined following discovery;

G. Issue injunctive relief requiring Defendant to audit and correct the employment classification of all current and former employees who were classified as Part Time while working full time hours, and to refund wrongfully collected premium overcharges;

**H.** Award Plaintiff attorney fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

**I.** Award such other and further relief as this Court deems just and proper.

---

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

---

Respectfully submitted,

*Jill Shufflebotham* (signature)

Jill Shufflebotham, Pro Se

2218 N 40th Street

Sheboygan, Wisconsin 53083

jillshufflebotham@gmail.com

920-889-2673

Date: 4/27/2026

---

*Plaintiff will submit supporting exhibits A through M under separate cover upon receipt of case number.*